UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

————————————————————————

KAREN JETTE,                              )
                                          )
                                          )
              Plaintiff,                  )
                                          )
v.                                        )         Civil Action No. 18-11650-JCB
                                          )
UNITED OF OMAHA LIFE                      )
INSURANCE COMPANY,                        )
                                          )
              Defendant.                  )
————————————————————————  )

ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM
[Docket No. 9]

July 11, 2019

Boal, M.J.

In this ERISA action, plaintiff Karen Jette seeks to recover long-term disability benefits

from defendant United of Omaha Life Insurance Company ("United"). United has filed

counterclaims against Jette, seeking to recover $15,745.99 it allegedly overpaid to Jette due to

her receipt of disability benefits under the Social Security Act. Jette has moved to dismiss

United's counterclaims. Docket No. 9.[1] This Court heard oral argument on July 10, 2019. For

the following reasons, this Court grants the motion without prejudice to United seeking leave to

amend the answer to add counterclaims after limited discovery.

---

[1] On July 10, 2019, the parties consented to the jurisdiction of a magistrate judge for all
purposes, Docket No. 20, and the case was reassigned to the undersigned on July 11, 2019.
Docket No. 24.

I.     FACTS[2]

Jette seeks long-term disability ("LTD") benefits under an employee welfare benefit plan sponsored and maintained by her former employer (the "Plan").  Counterclaim at ¶ 6.  LTD benefits under the Plan were at all relevant times funded by a group disability insurance policy issued by United to Jette's former employer.  Id. at ¶ 7.  United served as the Claim Administrator of the Plan.  Id. at ¶ 8.

Jette applied for and received LTD benefits under the Plan.  Id. at ¶ 9.  The Plan defines the monthly LTD benefit, in part, as follows:

> **Total Disability**
> If you are Disabled and earning less than 20% of Your Basic Monthly Earnings, the Monthly Benefit while Disabled is the lesser of:
> a)  60% of Your Basic Monthly Earnings, less Other Income Sources; or
> b)  the Maximum Monthly Benefit, less any Other Income Sources . . .

Id. at ¶ 10.  The Plan defines "Other Income Sources," in part, as follows:

> We take into account the total of all Your income from other sources of income in determining the amount of Your Monthly Benefit.  Your Other Income Sources are any of the following amounts that You receive or are eligible to receive as a result of Your Disability or the Sickness and/or Injury that caused, in whole or in part, Your Disability: . . .
>
> (e) Any benefits for You or Your Spouse and Dependent Child under:
>      1. the U.S. Social Security Act; . . .

Id. at ¶ 11.  The Plan provides United the right to seek a refund from a Plan participant in the event of an overpayment:

> **Refund to Us**
> If it is found that We paid more benefits than We should have paid under the Policy, We have the right to a refund from You or the recipient of benefits.

---

[2] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the counterclaim and drawing all reasonable inferences in United's favor.  See Morales-Tañón v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

Id. at ¶ 12.  In addition, on May 14, 2014, Jette executed a Group Disability Benefits

Reimbursement Agreement in which she agreed that:

> I will repay the Company, in a lump sum, all monthly and/or weekly
> benefits that have been paid to me, and which exceed the amount I was
> entitled under the terms of the Policy, as a result of receipt of Other Benefits.
> I will make this repayment within 30 days from the date on which Other
> Benefits are received.

Id. at ¶ 15.

After United began paying LTD benefits to Jette, she also began to receive Social

Security Disability Income ("SSDI") benefits under the Social Security Act.  Id. at ¶ 13.  United

alleges that Jette's receipt of SSDI benefits resulted in an overpayment of LTD benefits to her in

the amount of $15,745.99.  Id. at ¶ 14.

United has made multiple demands upon Jette for a refund of the overpayment balance.

Id. at ¶ 16.  Jette has failed to refund the overpayment balance in violation of the terms of the

Reimbursement Agreement, the Plan, and ERISA.  Id. at ¶ 17.

United's counterclaim contains four counts: (1) a claim for enforcement of the Plan

provisions; (2) a claim to enforce a lien or constructive trust; (3) a claim for unjust enrichment;

and (4) a claim for attorney's fees pursuant to 29 U.S.C. § 1132(g)(1) and/or the federal common

law of ERISA.  Counterclaim at ¶¶ 18-38.

II.     ANALYSIS

    A.      Standard Of Review

A complaint must contain only "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  "Like a complaint, a counterclaim is subject to dismissal if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the nonmoving party, the court determines that it 'fails to state a claim upon which relief can be granted.'"  Parent v. Principal Life Ins. Co., 763 F. Supp. 2d 257, 260 (D. Mass. 2011) (citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

In assessing the sufficiency of a claim, "an inquiring court must first separate wheat from chaff; that is, the court must separate the [counterclaim's] factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Guadalupe-Baez v. Pesquera, 819 F.3d 509, 514 (1st Cir. 2016) (citing Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  The Court must then determine "whether the well-pleaded facts, taken in their entirety, permit 'the reasonable inference that the [plaintiff] is liable for the misconduct alleged.'"  Id. (citations omitted).

B.    Section 502(a)(3) Of ERISA

Under Section 502(a)(3) of ERISA a fiduciary such as a United may bring an action:

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
(B) to obtain other appropriate equitable relief
    (i)    to redress such violations or
    (ii)    to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).  Thus, United cannot sue for damages under ERISA; it must show that it is seeking equitable relief.  Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993).  Jette argues that United's counterclaim seeking reimbursement of overpayments does not pursue equitable

4

relief and, therefore, must be dismissed.  Docket No. 10 at 1-2, 10.

The Supreme Court has interpreted "equitable relief" under Section 502(a)(3) as being "limited to 'those categories of relief that were *typically* available in equity' during the days of the divided bench (meaning, the period before 1938 when courts of law and equity were separate)."  Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan, 136 S. Ct. 651, 657 (2016) (quoting Mertens, 508 U.S. at 256) (emphasis in original).  "[W]hether the remedy a plaintiff seeks 'is legal or equitable depends on [(1)] the basis for [the plaintiff's] claim and [(2)] the nature of the underlying remedies sought."  Id. (quoting Sereboff v. Mid Atlantic Medical Servs., Inc., 547 U.S. 356, 363 (2006)).

In a series of cases involving plan fiduciaries seeking reimbursement of benefits after the plan beneficiary recovered money from a third party, the Supreme Court has developed the meaning of equitable relief for purposes of Section 502(a)(3).  In each case, ERISA beneficiaries suffered injuries in car accidents and the ERISA plans paid for their medical care.  When the beneficiaries later obtained monetary settlements from tortfeasors, the ERISA plans demanded reimbursement from the settlement proceeds.  After the beneficiaries refused, the ERISA plans brought claims under Section 502(a)(3) to enforce reimbursement provisions in their plan documents.

First, in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), the Supreme Court held that a plan with a claim for an equitable lien was—in the circumstances presented—seeking a legal rather than an equitable remedy.  Montanile, 136 S.Ct. at 657.  In that case, a plan sought to enforce an equitable lien by obtaining a money judgment from the beneficiaries.  The plan could not enforce the lien against the third-party settlement because the beneficiaries never actually possessed that fund; the fund went directly to the beneficiaries'

attorneys and a restricted trust.  Knudson, 534 U.S. at 214.  The Supreme Court held that the plan

sought a legal remedy, not an equitable one, even though the plan claimed that the money

judgment was a form of restitution.  Id. at 208-209, 213-214.  The Supreme Court explained that

restitution in equity typically involved enforcement of "a constructive trust or an equitable lien,

where money or property identified as belonging in good conscience to the plaintiff could clearly

be traced to particular funds or property in the defendant's possession."  Id. at 213.  The plan

sought legal, not equitable, restitution because "the basis for petitioners' claim [was] not that

respondents hold particular funds that, in good conscience, belong to petitioners, but that

petitioners [were] contractually entitled to *some* funds for benefits that they conferred."  Id. at

214 (emphasis in original).  In other words, the plan was seeking "the imposition of personal

liability for the benefits that they conferred upon respondents."  Id.  Because neither the basis for

the claim nor the particular remedy sought were equitable, the plan could not sue under Section

502(a)(3).  Id. at 218.

    Next, in Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356 (2006), the Supreme Court

held that both the basis for the claim and the remedy sought were equitable.  There, the plan

sought reimbursement from beneficiaries who had retained their settlement fund in a separate

account.  Sereboff, 547 U.S. at 359-360.  The Supreme Court held that the basis for the plan's

claim was equitable because the plan sought to enforce an equitable lien by agreement, a type of

equitable lien created by an agreement to convey a particular fund to another party.  See id. at

363-364.  The lien existed because of the beneficiaries' agreement with the plan to convey the

proceeds of any third-party settlement.  See id. at 361-362.  The Supreme Court explained that a

claim to enforce such a lien was equitable because the plan could rely on "the familiar rul[e] of

equity that a contract to convey a specific object even before it is acquired will make the

contractor a trustee as soon as he gets title to the thing."  Id. at 363-364 (quoting Barnes v. Alexander, 232 U.S. 117, 121 (1914)).  The remedy that the plan sought was also equitable because the plan "sought specifically identifiable funds that were within the possession and control" of the beneficiaries, and not recovery from the beneficiaries' assets generally.  Id. at 362-363.

In U.S. Airways, Inc. v. McCutchen, 569 U.S. 88 (2013), the Supreme Court reaffirmed its analysis in Sereboff and concluded that a plan sought to enforce an equitable claim by seeking equitable remedies.  As in Sereboff, "the basis for [the plan's] claim was equitable" because the plan's terms created an equitable lien by agreement on a third-party settlement.  McCutchen, 569 U.S. at 95.  The nature of the remedy was also equitable "because [it] claimed specifically identifiable funds within the [beneficiaries'] control—that is, a portion of the settlement they had gotten."  Id. (internal quotation marks omitted).

Finally, in Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan, 136 S.Ct. 651 (2016), the Supreme Court held that the remedy sought was not equitable.  As in Knudson and Sereboff, the plan beneficiary in Montanile participated in an ERISA plan that obliged the administrator to pay medical expenses and the plan was entitled to reimbursement if the petitioner later recovered money from a third party.  Montanile, 136 S.Ct. at 655.  The beneficiary received plan benefits after suffering injuries in a car accident.  Id.  The beneficiary also signed a reimbursement agreement reaffirming his obligation to reimburse the plan from any recovery he might later receive "as a result of any legal action or settlement or otherwise."  Id. at 656.

The plan beneficiary secured a tort settlement, paid a portion to his attorneys, and retained the remainder.  Id.  By the time the plan sued for reimbursement under Section

502(a)(3), the plan beneficiary maintained that he had spent most of the settlement funds.  Id.

The Supreme Court acknowledged that the basis for the plan's claim was equitable because the

plan "had an equitable lien by agreement that attached to [the beneficiary's] settlement fund

when he obtained title to that fund."  Id. at 658.  Moreover, "the nature of the [plan's] underlying

*remedy* would have been equitable had it immediately sued to enforce the lien against the

settlement fund then in [the beneficiary's] possession."  Id. (emphasis in original).  However, the

Supreme Court held that a beneficiary's "expenditure of the entire identifiable fund on

nontraceable items (like food or travel) destroys an equitable lien."  Id.; see also id. at 655.

The Supreme Court reiterated that equitable remedies are, as a general rule, "directed

against some specific thing;" that is, "they give or enforce a right to or over some particular

thing" rather than "a right to recover a sum of money generally out of the defendant's assets."

Id. at 658-659.  Thus, if "instead of preserving the specific fund subject to the lien, the defendant

dissipate[s] the entire fund on nontraceable items, that complete dissipation eliminate[s] the

lien."  Id. at 659.  "Even though the defendant's conduct was wrongful, the plaintiff could not

attach the defendant's general assets instead."  Id.  "The plaintiff had 'merely a personal claim

against the wrongdoer'—a quintessential action at law."  Id. (citations omitted).

Because the lower courts erroneously held that the plan could recover out of the

beneficiary's general assets, the Supreme Court remanded for further proceedings to determine

whether the beneficiary dissipated the entire fund on non-traceable purchases.  Id. at 662.

These cases establish the following criteria for securing an equitable lien by agreement in

an ERISA action: (1) there must be a promise by the beneficiary to reimburse the fiduciary for

benefits paid under the plan in the event of a recovery from a third party; (2) the reimbursement

agreement must identify a particular fund, distinct from the beneficiary's general assets, from

which the fiduciary will be reimbursed; (3) the funds specifically identified by the fiduciary must be within the possession and control of the beneficiary.  See Bilyeu v. Morgan Stanley Long Term Disability Plan, 683 F.3d 1083, 1092-1093 (9th Cir. 2012).  In addition, a defendant's expenditure of the entire identifiable fund on nontraceable items destroys the equitable lien. Montanile, 136 S.Ct. at 658.

Jette argues that United's claims are not equitable and must fail as a matter of law because United has "failed to identify a separately identifiable fund from which United can recover $15,745.99."  Docket No. 10 at 1; see also id. at 2 ("United has not identified a specific fund where the $15,745.99 is located."); 3 ("United has not identified a segregated fund holding $15,745.99 that Ms. Jette received from the Social Security Administration . . .").  This Court disagrees.

United's counterclaim does not seek to impose personal liability upon Jette but rather reimbursement of particular funds or property, namely, overpaid long-term disability benefits paid under the Plan.  Counterclaim at ¶¶ 25-26.  See, e.g., Cognetta v. Bonavita, 330 F. Supp. 3d 797, 807-808 (E.D.N.Y. 2018); Schiavone v. Prudential Ins. Co. of Am., No. 16-cv-09848, 2017 WL 1493721, at *6 (N.D. Ill. Apr. 26, 2017); U.S. Renal Care, Inc. v. Wellspan Health, No. 1:14-CV-2257, 2017 WL 1062374, at *8 (M.D. Pa. Mar. 21, 2017).  Specifically, United asks the Court to impose a constructive trust or enforce an equitable lien over the overpayment. Counterclaim at ¶¶ 24-29.  Thus, the nature of the claim is equitable.

To the extent that Jette argues that the fund must be entirely separate from anything else, i.e., some type of stand-alone fund, that argument is not supported by the caselaw.  "If 'separation' were a necessary fact for the imposition of an equitable lien, a claimant could never obtain such a lien over a settlement which either exceeds the amount of benefits paid or includes

9

monies for other claims brought against a third party who provided the settlement funds." <u>Bd. of Trustees of the Nat'l Elevator Indus. Health Benefit Plan v. Goodspeed</u>, __ F. Supp. 3d __, 2019 WL 1934475, at *4 (E.D. Pa. May 1, 2019).  <u>See also Montanile</u>, 136 S.Ct. at 661 (noting that in equity "commingling a specifically identified fund—to which a lien attached—with a different fund of the defendant's did not destroy the lien.").

United, however, has not alleged that the funds are in the possession of Jette.  <u>Cf. Schiavone</u>, 2017 WL 1493721, at *6 (denying motion to dismiss because, among other things, the plan had alleged that the funds were within the possession of the beneficiary).  Therefore, United has failed to allege sufficient facts to show that the remedy it seeks is equitable in nature.  At oral argument, United suggested that it had not alleged that the funds are in the possession of Jette because it did not have sufficient knowledge to make that allegation.  Accordingly, this Court grants the motion to dismiss without prejudice to United moving to amend the answer to add counterclaims after limited discovery on this issue.

III.   <u>ORDER</u>

For the foregoing reasons, this Court grants Jette's motion to dismiss United's counterclaims without prejudice to United seeking to amend its answer to add counterclaims after limited discovery on the issue of whether the funds are in the possession of Jette.  Within two weeks, the parties shall confer regarding the manner and timing and such discovery.  Within two weeks, the parties shall, if they agree on the manner and timing of such discovery, file a status report, and if they do not agree, their competing proposals regarding such discovery.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge